IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MARILYN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:17-cv-00407-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.    Introduction**

The plaintiff, Marilyn Jones, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and a period of disability. Ms. Jones timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Jones was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a fourth-grade education. (Tr. at 24.) Her past work experiences include employment as a painter. (Tr. at 86.) Ms. Jones

1

claims that she became disabled on January 1, 2012, due to leg and joint pain, depression, and anxiety. (Tr. at 20-23.) She later amended her onset date to January 30, 2013. (Tr. at 20.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Jones last met the insured status requirements of the Social Security Act through June 30, 2014, meaning that for DIB purposes she had to establish disability before that date. (Tr. at 20.) He further determined that Ms. Jones has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's ischemic heart disease, hypertension, anxiety, and depression are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21.) The ALJ did not find Ms. Jones's allegations to be totally credible, and he determined that she has the following RFC: sedentary work except that she can only occasionally push or pull with her bilateral upper and lower extremities; never climb ladders, ropes, or

scaffolding, and only occasionally climb ramps and stairs; she must avoid concentrated exposure to extreme heat, extreme cold, fumes, odors, chemicals, gases, dust, and poorly ventilated areas; she can have no exposure to dangerous machinery or unprotected heights and cannot perform work that requires walking on uneven or slippery surfaces; she is able to understand and remember short and simple instructions but is unable to do so with detailed or complex instructions; she can do simple, routine, and repetitive tasks but is unable to perform detailed or complex tasks; she can have no more than occasional contact with the general-public and coworkers; she can deal with changes in the workplace if they are introduced occasionally and gradually and are well explained; and she must not be required to read instructions, write reports, or do math calculations. (Tr. at 23.)

According to the ALJ, Ms. Jones is unable to perform any of her past relevant work, she is a "younger individual age 18-44" and she has a "marginal education," as those terms are defined by the regulations. (Tr. at 29.) Because Plaintiff cannot perform the full range of sedentary work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as assembler, table worker, and final assembler. (Tr. at 29-30.) The ALJ concluded his findings by stating that Plaintiff "was not

under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Ms. Jones alleges that the ALJ should have given more weight to the opinion of the one-time consultative examining psychologist, Dr. Robert Storjohann, than to the opinion of the non-examining medical consultant, Dr. Robert Estock. His failure to do so, according to Plaintiff, should result in the Commissioner's decision being reversed and remanded.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176,

7

1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ." 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating medical

sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of doctor who conducted a single examination and who was not a treating doctor).

Additionally, non-examining medical consultants or medical experts are highly qualified medical specialists who are experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(iii), 416.927(e)(2)(iii); Social Security Ruling ("SSR") 96-6p. In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Dr. Storjohann examined the plaintiff at the request of the administration on February 19, 2014. (Tr. at 385.) Plaintiff reported experiencing chronic issues with feeling anxious, tense, and nervous. (Tr. at 388.) She described racing thoughts and constant worry that she cannot control, as well as poor attention and concentration,

difficulty thinking and making decisions, and short-term memory difficulties. (*Id.*) She reported feeling uncomfortable in social situations, groups, or crowds, stating that she believes she is being looked at, judged, and talked about by others. (*Id.*) She stated that she experiences panic attacks daily and that they are symptomized by shortness of breath, occasional hyperventilation, occasional dizziness, shaking, occasional nausea, hot flashes, tachycardia, sweating, a fear of dying, and a fear of losing control and going crazy. (*Id.*) Plaintiff also reported she has frequent crying spells as a symptom of her depression and that she has sleep disturbances in the form of difficulty getting to sleep and awaking frequently during the night and morning. (*Id.*) Plaintiff did, however, report that she does some simple food preparation for herself every day and is able to go grocery shopping with assistance from a friend. (Tr. at 389.)

Dr. Storjohann diagnosed Plaintiff with generalized anxiety disorder, panic disorder with agoraphobia, social phobia, major depression, and Schizoid personality disorder. (Tr. at 390.) Dr. Storjohann noted that Plaintiff currently takes Fluoxitine 40mg and previously took Xanax. (Tr. at 387-88.) He noted that all of her prescriptions were prescribed by her personal physician and that she did not have a psychologist that she saw regularly. (*Id.*) He assigned her a Global Assessment of Functioning ("GAF") score of 50, which indicates serious

symptoms. (Tr. at 390.) He opined that she would have moderate deficits in her ability to understand, carry out, and remember instructions in a work setting. (*Id.*) In addition, he opined that she would have marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures. (*Id.*)

The ALJ gave little weight to Dr. Storjohann's opinion because Dr. Storjohann saw Plaintiff only once, Plaintiff's daily activities of grocery shopping with her friend contradicted his opinion, the absence of supporting medical evidence and mental health treatment in the record contradicted his opinion, and Dr. Storjohann's own notes—that Plaintiff's prescription medication helped manage her symptoms of anxiety and depression—contradicted his opinion. (Tr. at 28.)

Substantial evidence supports the ALJ's decision here. As the ALJ explained, treatment records containing mental status examinations revealed that Plaintiff had normal mood, affect, judgment and/or thought content. (Tr. at 26, 289, 314, 326, 330-31, 335, 337, 348, 349, 352, 357, 406, 409, 413, 421, 428, 432, 447). Likewise, Plaintiff's treatment history, which consisted of one or two medications for her mental impairments and no mental health treatment by a mental health specialist, demonstrates that she is not as limited as Dr. Storjohann found. (Tr. at 26, 326, 329, 331, 335, 337, 344, 357). Moreover, medications

prescribed have helped Plaintiff with her anxiety and depression. (Tr. at 289, 314, 326, 330-31, 335, 337, 348-49, 352, 357, 388, 406, 409, 413, 421, 428, 432, 447.) Furthermore, the plaintiff's daily activity of grocery shopping with a friend suggests that she can have occasional interactions and is not as limited as her allegations of additional social limitations suggest. (Tr. at 28, 219, 389.)

In March 2014, Dr. Estock reviewed the available evidence, including Dr. Storjohann's medical opinion. (Tr. at 60-72.) He found that Plaintiff is "not significantly limited" in her ability to remember locations and work-like procedures; understand and remember very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; and travel in unfamiliar places or use public transportation. (Tr. at 70.) He also found her "moderately limited" in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept

instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (*Id.*)

The ALJ gave significant weight to Dr. Estock's opinion, reasoning that he is an impartial acceptable medical source, he has Social Security disability program knowledge, and most of his opinion was consistent with the record as a whole. (Tr. at 27.)

Substantial evidence supports the ALJ's treatment of Dr. Estock's opinion. For example, the ALJ noted that Dr. Estock's opinion was consistent with Dr. Storjohann's observation that Plaintiff was ill at ease, restless, socially uncomfortable, and dysphoric. (Tr. at 27, 389). The evidence noted above, including the fact that Plaintiff never took more than two medications for mental health symptoms, the medications lessened her symptoms, and she never saw a mental health specialist, provides additional support for Dr. Estock's opinion. (Tr. at 27, 289, 314, 326, 330-31, 337, 348-49, 352, 357, 406, 409, 413, 421, 428, 432, 447.) Additionally, there are numerous cases acknowledging that an ALJ may afford more weight to a non-examining medical source than to a one-time examiner if the evidence supports such a conclusion. *See, e.g.*, *Cooper v. Comm'r*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting "even if the non-examining doctor was unable to review all of [claimant's] medical records . . . , she cited several portions

of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as [claimant's] testimony"); *Jarrett v. Comm'r*, 422 F. App'x 869, 873-74 (11th Cir. 2011) (holding ALJ properly gave more weight to non-examining State consultants' opinions over treating doctor's opinion).

Plaintiff takes issue with the fact that Dr. Estock was never asked about her ability to relate appropriately to supervisors, coworkers, or the public. However, she cites no legal authority requiring the ALJ to give Dr. Storjohann's opinion more weight for those reasons, especially since his opinion was inconsistent with treatment notes, clinical findings, and Plaintiff's medical history. Furthermore, when deciding what mental limitations Plaintiff had, Dr. Estock concluded that the evidence showed that Plaintiff's contact with the general public should be infrequent and nonconfrontational. (Tr.at 71.)

In sum, the Court finds no reversible error in the ALJ's treatment of the opinions of Drs. Storjohann and Estock.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Jones's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 18, 2018.

```
                                    _____
                                         L. Scott Coogler
                                    United States District Judge
```
160704